(41 App. Div. 178.)

PEOPLE ex rel. CRANE v. CHANDLER, Clerk.

(Supreme Court, Appellate Division, Fourth Department. June 6, 1899.)

INTOXICATING LIQUORS—LOCAL OPTION—ELECTION—TOWN MEETING.
 The requisite number of town electors filed with the clerk a petition requesting the submission at the next annual town meeting of the questions provided by Liquor Tax Law, § 16. Four days before the meeting the clerk posted conspicuously in four public places a notice stating that the license question, as provided by the Raines law, would be submitted to the voters. Ballots containing such questions were furnished the voters desiring to vote thereon, and the votes on said questions were counted, and the result declared; only one question receiving a majority in the affirmative. Laws 1899, c. 398, amending the liquor tax law, provides that a special town meeting shall only be called on an order of the supreme or county court on sufficient reasons shown. *Held,* that the election was regular and efficient, and that a special meeting should not be called.

Appeal from special term, Cayuga county.

Application by the people, on the relation of Melville W. Crane, against James K. Chandler, as town clerk of the town of Moravia, for mandamus to compel respondent to call a special town meeting

to vote on the liquor tax question. From an order denying the writ, relator appeals. Affirmed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

Hull Greenfield, for appellant.

S. Edwin Day, for respondent.

HARDIN, P. J. January 12, 1899, there was filed with the town clerk a written petition, signed by the electors of said town, to the number of 10 per cent. of the vote cast at the next preceding general election held in that town, which was acknowledged as required by law, requesting the submission at the then next annual town meeting to be held in said town of the questions provided to be submitted at the annual town meeting by section 16 of the liquor tax law. The town clerk provided ballots for the submission of said questions at the annual town meeting held in said town on February 21, 1899, and the ballots which were provided by the clerk were actually furnished to voters at said town meeting; and, upon a canvass and count of said votes so cast upon said questions, it was ascertained and declared by the election officers charged by law with such canvass and count that a majority of the votes cast upon said questions had been and was in the negative, "except question number three, and as to said latter question the majority of the votes cast thereon was in the affirmative."

The relator claims that, by reason of the failure to give notice of the taking of said vote upon said questions at said town meeting that such vote would be by ballot as aforesaid, "the said questions were not properly submitted to the electors of said town at said town meeting." In the affidavit of the defendant is a schedule of the propositions, under the liquor tax law, as they were submitted at the annual town meeting, and his affidavit states:

"And such propositions were properly submitted to the electors of said town, and were then voted on by said electors; and the number of affirmative and negative ballots cast on said several propositions then and there by said voters, and the number of blank ballots on each of said propositions, appear on said Schedule A, and the majorities for or against each proposition."

The first question submitted was: "Shall any corporation, association, co-partnership, or person be authorized to traffic in liquors under the provisions of subdivision 1 of section 11 of the liquor tax law in the town of Moravia?" Upon that question it appears that there were 156 affirmative votes and 317 negative votes. The blanks on that question were 194. The question was defeated by a majority of 161 votes. To the second question propounded, viz.: "Shall any corporation, association, co-partnership, or person be authorized to traffic in liquor under the provisions of subdivision 2 of section 11 of the liquor tax law in the town of Moravia?"—the affirmative votes were 128 and the negative votes were 302. That question was defeated by a majority of 174 votes. To the third question propounded, viz.: "Shall any corporation, association, co-partnership, or person be authorized to traffic in liquor under the provisions of subdivision 3 of section 11 of the liquor tax law in the town of Moravia?"—the

votes were 279 yeas and 230 nays, and the question was declared carried in the affirmative by a majority of 49 votes. To the fourth question, viz.: "Shall any corporation, association, co-partnership, or person be authorized to traffic in liquors under subdivision 1 of section 11 of the liquor tax law, but only in connection with the business of keeping a hotel, in the town of Moravia, if the majority of the votes cast on the first question submitted are in the negative?"—there were cast in the affirmative 272 votes and in the negative 301 votes.

It appears that every person who desired to vote at said election on the propositions, or either of them, who attended the town meeting or election to vote, was furnished a ticket, and every voter but two took such ticket with him into his booth, and cast his vote in accordance with the law. It appears that the whole number of votes cast for supervisor at said town meeting was 678, which was the combined highest vote for any office. The total vote cast at the town meeting in 1896 was 568; in 1897, 600; in 1898, 568. It appears by the affidavit used upon the motion that the clerk, four days before said town meeting, posted "conspicuously in four of the most public places of said town" a notice of the candidates to be voted for at said town meeting; and the notice contained the following language, to wit: "The license question, as provided by the Raines law, will be submitted to the voters at this town meeting. James K. Chandler, Town Clerk."

Upon an affidavit made by the relator on the 21st day of April, 1899, he gave notice of intention to make an application at special term for an order directing the issuing, out of and under the seal of this court, of a peremptory writ of mandamus, directed to the clerk, requiring him "to forthwith call a special town meeting of the electors of said town for the purpose of voting by ballot upon the four propositions contained in and provided for in section 16 of the liquor tax law." The application for a mandamus was heard on the 29th day of April, 1899. It appears by the affidavit used at the special term that "no order has been granted by any court or judge for the calling of a special town meeting in said town," nor has any such order been filed with the town clerk.

By an amendment of the liquor tax law in 1899 (Laws 1899, c. 398), which amendment took effect on the 22d of April of that year, relating to special town meetings, it was provided:

"Such special town meeting shall only be called upon the filing with the town clerk of the petition aforesaid, and upon an order of the supreme or county court, or a justice or judge thereof, respectively, upon sufficient reasons being shown therefor."

That amendment operated to inhibit the town clerk from calling a special town meeting without an order made by one of the courts mentioned, or a justice or judge thereof.

It is contended in behalf of the appellant that the notice of intention to submit the questions to the electors ought to have been filed 20 days before the town meeting, and reference is made to section 32 of the town law. The affidavit seems to disclose facts indicating

that the electors of the town had notice of the intention to submit the questions, and that they acted upon such notice, and expressed their will in the mode prescribed by statute, and we have found no informalities sufficient to warrant us in saying that the conclusion reached by the electors was not efficient. In People v. Wood, 148 N. Y. 142, 42 N. E. 536, it was said by the court:

"We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them. The object of popular elections is to ascertain the popular will, not to thwart it. The object of election laws is to secure the rights of duly-qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud."

We think the electors of the town of Moravia expressed their will in respect to the questions submitted to them, and that it cannot be said that the election was irregular or inefficient. It seems to be the policy of the law that such questions shall be submitted only once in two years to the electors of a municipality.

The views already expressed indicate that the special term committed no error in refusing the peremptory writ of mandamus requiring the clerk to call a special town meeting for the purpose of a resubmission of the questions.

Order affirmed, with taxable costs. All concur.