(34 Misc. Rep. 662.)

In re ROWLEY.

(Supreme Court, Special Term, Ontario County.   April 22, 1901.)

INTOXICATING LIQUORS—LOCAL OPTION ELECTION—NOTICE—PUBLICATION—RE-
SUBMISSION.

Where sample ballots containing each of the four local option questions
to be voted on at a town meeting in a no-license town were mailed to
every elector of the town, and several public meetings were held for the
discussion of such questions, notices of which were published in a news-
paper in the town, and circulars for and against local option were freely
distributed, and more votes on such questions were cast at such election
than for the officer receiving the highest number of votes, the election
will not be declared void, and the questions resubmitted at a special
election, because the town clerk failed to post notices in four public
places, and publish one notice in a newspaper, that such questions would
be voted on at the town meeting as required by the liquor tax law.

Application by William W. Rowley for an order directing a new
town meeting to be held in the town of Manchester, Ontario county,
for resubmission of the question of local option.   Denied.

John Colmey, for petitioner.
W. C. Ellis and Frank Rice, for respondents.

RICH, J.   On the 31st day of January, 1901, there was filed in
the office of the town clerk of the town of Manchester, Ontario
county, N. Y., the petition required by section 16 of the liquor tax
law, praying that the question of the sale of liquor in that town
be submitted to the voters thereof at the town meeting to be held
March 5, 1901.   It therefore became the duty of the town clerk, at
least 10 days before the holding of such town meeting, to cause to
be printed and posted in not less than four public places in the town
a notice of the fact that all of the local option questions would be
voted on at such town meeting, and also to publish said notice, at
least 5 days before the vote was to be taken, once in one news
paper; and although he was informed of his duty in respect to giv-
ing such notice prior to the 5th day of March, 1901, there was an
entire failure upon his part to perform his duty in that regard.   No-
tice was given, however, to the electors of the fact that all of the
local option questions would be voted on at such town meeting;
and sample ballots containing each of the four propositions to be
voted upon were mailed to every elector of the town who voted at
the general election in the fall of 1900, and to those, also, who had
become residents thereof prior to March 5, 1901.   And, in addition
to this, several public meetings were held, at which the local option
questions were discussed.   Notices of these discussions appeared
in a newspaper published in the town of Manchester February 16,
February 23, and March 2, 1901.   Not content with this, and in
order that notice that these questions were to be voted upon should
be given to all, it was conceded upon the argument that circulars
were freely distributed throughout the town, one being signed by
Rev. Father O'Hanlon, and 11 others, addressed, "To the voters of
the town of Manchester," giving them instructions, and concluding
as follows:

"Vote 'No' in the name of our children, our wives, our homes, our churches; and, for the sake of good order, vote 'No.' "

Another as follows:

"A Word to Voters.

"At the approaching town meeting the question of license is to be voted upon, and, in order that every voter may exercise the right of his franchise intelligently, it may not be out of place to call his attention to a few candid facts. The town of Manchester, under the no-license law, loses at least $1,000 a year which might be collected from license certificates. It also loses thousands of dollars more during the course of a year by trade which is driven away by the operation of no-license. So long as liquor is sold in Canandaigua, Phelps, Orleans, Palmyra, and Geneva, the residents of the town of Manchester will be supplied with liquor, ale, and beer in large or small quantities. The good people who favor and vote for no-license imagine that they have a law, when in reality they have no law whatever. If license is voted, the several hotels in the town will be under the operation of the Raines liquor tax law, and any person caught violating the law is liable to have his license revoked, and be subjected to a severe fine. Now, then, voters, which will you have,—liquor sold according to law, or the present 'moonshine' system continued? Will you vote to keep trade and money at home, to reduce taxes, or will you vote for a law which will continue to aid Canandaigua, Phelps, Orleans, Palmyra, and Geneva? It is for you to decide.	A Taxpayer."

In this case there is no public interest to be subserved, as in the case of an already licensed town, and an invalid election which would not prevent the granting of liquor tax certificates. That the electors received notice of the proposal to vote upon this question is evidenced by the fact that while the whole number of votes cast for supervisor at said town meeting was 1,146, with 68 blank ballots, which was the combined highest vote for any officer, the total number of votes cast upon each of the four liquor tax propositions was 1,218. As I have said before, it was the duty of the town clerk to "give notice of the vote on local option." In re Eggleston, 51 App. Div. 38, 64 N. Y. Supp. 471. The statute in respect to his duties is directory only. In case of a failure of the town clerk to post and publish the notice, where the electors were not given other notice, the vote cast would be void, and the will of the people thwarted by the willful refusal of that officer to perform his duties. But that is not the case here. The end sought to be attained by the statute, to wit, the "giving of notice of the questions to be voted for at the town meeting," was accomplished in this case, as already clearly appears. The learned counsel for the petitioner contends that In re Eggleston, above cited, is decisive upon the question involved on this motion. In that case, at the time notice should have been given no preliminary petition was on file in the town clerk's office, and the very basis and foundation of the right to a submission of the question was absent. The question of the requirement that the clerk post notices was only incidentally discussed. That it was not intended to decide that the giving of the notice by the clerk was an absolute necessity is found, in that the same court decided the case of People v. Chandler, 41 App. Div. 178, 58 N. Y. Supp. 794, which is an authority upon this question. Ballots and samples thereof were delivered by the town clerk, prior to the holding of the town meeting, to the chairmen of the several election boards, as re-

quired by law. The questions were fairly submitted to the electors of the town, and why, under the circumstances of this case, should the question be resubmitted, and the town put to the expense and inconvenience of another election? There is no good reason for it.

This motion must therefore be denied, with $10 costs to respondents.